UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LAVARNE WILLIAMS,

                Plaintiff,

        v.

ROBERT DEMPSEY, Homicide Squad Detective, Shield #53; WILLIAM BROSNAN, Homicide Squad Detective, Shield # 309; JOHN KOURIL, Homicide Squad Detective; JAMES KELLEY, Bureau Of Special Operations, Shield # 2380; MARTY REA, Bureau Of Special Operations; C. COSTELLO, Latent Fingerprint Section, Technical Services Bureau, Shield # 682; JAMES D. GRANELLE, Detective Lieutenant Commanding Officer; and MICHAEL WALSH, Former Assistant District Attorney Of Nassau County,

                Defendants.
--------------------------------------------------------X

**<u>REPORT AND RECOMMENDATION</u>**

22-CV-04746 (GRB) (LGD)

**LEE G. DUNST**, Magistrate Judge:

On July 25, 2022, *pro se* plaintiff Lavarne Williams ("Plaintiff") filed this federal lawsuit alleging that over twenty-eight years earlier—in February 1994—defendants Detective Robert Dempsey, Shield #53 ("Dempsey"); Detective William Brosnan, Shield #309 ("Brosnan"); Detective John Kouril ("Kouril"); Officer James Kelley, Shield #2380 ("Kelley"); Officer Marty Rea ("Rea"); Officer C. Costello, Shield #682 ("Costello"); Detective Lieutenant Commanding Officer James D. Granelle ("Granelle"); and former Nassau County Assistant District Attorney Michael Walsh ("Walsh," and collectively with Dempsey, Brosnan, Kouril, Kelley, Rea, Costello, and Granelle "Defendants") unlawfully arrested Plaintiff, assaulted him, fabricated evidence against him, and coerced him into a false confession that resulted in Plaintiff's 1995 New York state convictions for murder and rape. *See* Electronic Case File Number ("ECF No.") 1 ("Complaint" or "Compl.") (original complaint naming Dempsey, Brosnan, Kouril, Kelley, and Rea); ECF No. 8 (Plaintiff's operative pleading naming all Defendants). On October 21, 2022, District Judge Gary R. Brown *sua*

*sponte* dismissed the Complaint and granted Plaintiff leave to amend his pleadings. *Williams v. Dempsey*, No. 22-CV-4746, 2022 WL 20622843 (E.D.N.Y. Oct. 21, 2022) (Brown, J.). Presently before the Court, pursuant to the November 28, 2022 referral from Judge Brown for a Report and Recommendation, is Defendants' motion to dismiss Plaintiff's subsequent pleading, the [First] Amended Complaint at ECF No. 8 ("FAC"). *See* ECF No. 23 ("Motion"). For the reasons set forth below, the undersigned respectfully recommends that the Court grant the Motion and deny Plaintiff leave to further amend his pleadings.

I.     BACKGROUND

   A.     Relevant Alleged Facts.[1]

On or about February 16, 1994, Nassau County Police Department ("NCPD") officers Kelley and Rea arrested Plaintiff near his home in Uniondale, New York and took Plaintiff to a nearby NCPD station in Mineola, New York.[2] FAC at 5. Subsequently, NCPD homicide detectives Dempsey, Brosnan, and Kouril interrogated Plaintiff for over eight hours. *Id*. at 5-6. Dempsey allegedly used the back of his hand to strike Plaintiff in the face "several times" during that interrogation. *Id*. at 6. Those strikes reportedly inflicted unidentified "facial injuries to [Plaintiff's] left[] eye, cheekbone, and jaw."[3] *Id*. at 5. Brosnan and Kouril reportedly witnessed the assaults but "did nothing" in response.

---

[1] Unless otherwise specified, the facts set forth herein are taken from the FAC and documents it attaches and incorporates by reference. *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022). This Report and Recommendation also takes judicial notice of certain below-noted filings from related actions. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (taking judicial notice of filing in another litigation; collecting cases that did the same); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of filing from another action).

[2] The Complaint's caption referred to Kelley and Rea as detectives. *See* Compl. The FAC, however, does not state in the caption or elsewhere that Kelley and Rea were detectives. *See* FAC. For consistency with Plaintiff's operative pleading, this Report and Recommendation refers to Kelley and Rea as officers. *See Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) (finding that district court "was correct to look only to the allegations in [plaintiff]'s most recent complaint" because it "supersedes the original, and renders it of no legal effect" (internal quotations omitted)).

[3] The FAC alleges that an unnamed doctor at an unidentified institution determined at an unspecified time that Plaintiff's face had no fractures. *See* FAC at 5. The Court notes, without considering it with respect to the instant motion, that Plaintiff previously alleged that medical personnel at Nassau County Medical Center evaluated him on February 18, 1994. Compl. at 4; *see Dluhos*, 162 F.3d at 68 (confirming impropriety of accepting allegations from prior pleadings).

*Id*. at 6.  Dempsey, Brosnan, and Kouril allegedly subjected Plaintiff to "extreme duress and coercion" and, according to Plaintiff, "forced" him to sign a thirteen-page rape and murder confession that they "fabricated." *Id*. at 6-7.

Plaintiff contends that Dempsey, Brosnan, Kouril, Costello, and Granelle also fabricated incriminating evidence in Plaintiff's state criminal case.[4]  Dempsey, Brosnan, and Kouril reportedly "created" a "paper bag" with Plaintiff's "latent fingerprint" on it and falsely reported that they found it near the homicide victim "to make it appear as though [Plaintiff] was at the crime scene." *Id*. at 6. Costello was an officer in the NCPD Latent Finger Print Section, Technical Services Bureau who allegedly falsely confirmed that Plaintiff's fingerprint was on the paper bag.  *Id*.  Granelle was the NCPD Detective Lieutenant, Commanding Officer who, according to Plaintiff, "wrongfully and unlawfully consigns [sic] the Latent Fingerprint Report as to sanction the alleged findings of the paper bag." *Id*. at 6-7.

Walsh was a Nassau County Assistant District Attorney in 1994 and 1995.  *Id*. at 8.  Plaintiff alleges that, during that time, Walsh received "exculpatory information from Dr. Arlene Colon, [the] top Forensic Serologist in Nassau County" revealing that Dr. Colon "test[ed] all of the evidence collected from the crime scene and from the victim, then test[ed] it against the DNA of the Plaintiff" and that Dr. Colon "concluded that there was no match or genetic connection to the Plaintiff as the perpetrator." *Id*.  At that point, according to Plaintiff, the Defendants "kn[ew] that I was not the perpetrator based on the tested DNA evidence . . . but continued to conspire against my rights and deprive me of my rights under color of law to keep me confined." *Id*. at 9.

---

[4] Plaintiff contends that behavior was part of a broader "pattern of conspiracy against and deprivation of rights under color of state law." FAC at 7.  According to Plaintiff, Dempsey "falsely accused" three men charged with a 1985 rape and murder by fabricating evidence against them and coercing one of them into a false confession.  *Id*. at 7-8.  Those defendants' convictions were vacated in 2003 after "Short Tandem Repeat" DNA analysis excluded those defendants from matching the profile of the semen sample collected from the victim.  *See id*. at 27 (news article attached to the FAC).

3

On May 12, 1995, Plaintiff was convicted by a jury in New York state court on two counts of murder in the second degree and one count of rape in the first degree under New York law. ECF No. 24-5 at 3. On June 12, 1995, Plaintiff was sentenced in County Court, Nassau County as a persistent felony offender. *See People v. Williams*, 240 A.D.2d 442, 442 (N.Y. App. Div. 2d Dep't 1997). As a result, Plaintiff received a sentence of fifty-years to life. *Dempsey*, 2022 WL 20622843, at *4; *Incarcerated Lookup*, N.Y. STATE DEP'T OF CORR. AND CMTY. SUPERVISION, https://nysdoccslookup.doccs.ny.gov/ (enter "95A5492" in the "Department ID Number" box and click "search") (last visited Sept. 14, 2023). Plaintiff appealed his conviction, which was then affirmed by the New York Appellate Division, Second Department on June 2, 1997. *See Williams*, 240 A.D.2d at 443 (finding that the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt").

On June 17, 2022, Plaintiff moved under N.Y. C.P.L. § 440.10 to obtain DNA testing of the evidence supporting his convictions and to vacate those convictions (the "Vacatur Motion") based, in large part, on the facts alleged the FAC. *See* ECF No. 24-3. On September 9, 2022, the Nassau County Supreme Court denied that motion. *See* ECF No. 24-5.

B.      **Relevant Procedural History**

On July 25, 2022, Plaintiff, who is now incarcerated at the Green Haven Correctional Facility, commenced this action by placing the Complaint for mailing to this Court.[5] Compl. at 7. The Complaint asserted nearly the same allegations against Dempsey, Brosnan, Kouril, Kelley, and Rea as are in the FAC.[6] *Compare* Compl. *with* FAC; *see also Dempsey*, 2022 WL 20622843, at *1-2 (describing the Complaint). Plaintiff pled those facts in support of a claim under 42 U.S.C. § 1983

---

[5] "Under the prison mailbox rule, a *pro se* prisoner's complaint is deemed filed upon its delivery to prison authorities for transmittal to the district court." *Sides v. Paolano*, 782 F. App'x 49, 50 (2d Cir. 2019) (citing *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993)).

[6] The Complaint did not name Costello, Granelle, or Walsh. *See generally* Compl.

4

("Section 1983") alleging violations of unspecified "civil rights." Compl. at 7. Plaintiff requested that the Court (1) order the "F.B.I. and U.S. Attorney's Office, Eastern District of New York to commence a criminal investigation against the Defendants" and (2) "grant permission to Plaintiff to p[u]rsue civil liabilities against the defendants for deprivation of rights under color of law against my person for violating my civil rights." *Id*. at 5.

On October 21, 2022, District Judge Gary R. Brown *sua sponte* dismissed the Complaint—after construing its Section 1983 claims as asserting excessive force and malicious prosecution causes of action—as "frivolous" under 28 U.S.C. § 1915A(b)(1) for three reasons. *Dempsey*, 2022 WL 20622843, at *2-5. First, the claims in the Complaint "are well outside the statute of limitations and are time-barred." *Id*. at *4. Second, Plaintiff's "complain[t]s of misconduct during his underlying state court prosecution, including the veracity of his confession and the alleged planting of evidence against him" are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny. *Id*. Third, Plaintiff sought remedies that were not "available" because the Court lacks authority to compel a criminal investigation and would not allow deficient claims to proceed. *Id*. at *5. Finally, Judge Brown "[i]n an abundance of caution" granted Plaintiff leave to amend the Complaint "to allege facts that would support a basis to toll the statute of limitations applicable to his excessive force claims." *Id*.

On November 18, 2022, the Court received the FAC. The FAC, unlike the Complaint, makes no mention of Section 1983. It also does not seek damages. Instead, it seeks two new forms of relief. First, it asks that "Defendants be tried for the crimes of Conspiracy Against Rights and Deprivation of Rights Under Color of Law" under 18 U.S.C. §§ 241, 242 "for denying Plaintiff equal protection of the laws against a . . . coercive interrogation that caused Plaintiff to sign a confession statement against his will in violation of the [Fourteenth] Amendment." FAC at 10. Second, it asks for the Court to order a "Short Tandem Repeat" DNA test on the evidence that supported Plaintiff's state

5

criminal convictions. *Id*.

On November 22, 2022, Defendants filed a premotion conference request pursuant to Judge Brown's Individual Practice Rules in connection with an anticipated motion to dismiss the FAC. *See* ECF No. 11. On November 28, 2022, Judge Brown referred Defendants' premotion conference request to the undersigned to adjudicate and referred any resulting motion to the undersigned for a Report and Recommendation. *See* Nov. 28, 2022 Order. The undersigned then granted the premotion conference request and set a briefing schedule for the Motion. *See* Feb. 15, 2023 Order (granting premotion conference request); ECF No. 19 (reflecting initial briefing schedule set during the April 11, 2023 premotion conference); May 15, 2023 Order (extending briefing schedule). The parties completed briefing the Motion on July 20, 2023. *See* ECF No. 24 ("Def. Mem."); ECF No. 26 ("Opp."); ECF No. 28 (reply). As detailed more fully below, Defendants argue that the FAC's claims are deficient because they are beyond the Court's subject matter jurisdiction and otherwise fail to state a claim. *See* Def. Mem. at 5-7. Plaintiff's Opposition defends the FAC's pursuit of DNA testing and seeks to amend the FAC to convert its current request for a criminal prosecution of Defendants to a request for damages under Section 1983 and 42 U.S.C. § 1985(3) ("Section 1985"). *See* Opp. at 7-8 (seeking "amendment of pleading pursuant to Fed. R. Civ. P. Rule 15(a)(2)").

## II.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cr. 2009) (per curiam) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In deciding a Rule 12(b)(1) motion, "the court must take all facts alleged in the complaint as

6

true and draw all reasonable inferences in favor of plaintiff." *NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citation omitted). The Court may also "rely on non-conclusory, non-hearsay statements outside the pleadings" when evaluating subject matter jurisdiction. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013)

### B. Failure To State A Claim

Under Rule 12(b)(6), a party may move to dismiss a complaint when it fails to state a claim. Fed. R. Civ. P. 12(b)(6). Courts evaluate motions to dismiss under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That standard requires the Court to accept as true all well-pled factual allegations in the FAC and consider attachments to and documents incorporated by reference in the FAC. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019). The Court may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotations omitted). While the Court accepts the FAC's well-pled allegations as true, the Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements. *See In re Facebook, Inc., IPO Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015). To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 664; *see also id.* at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Determining whether the FAC states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 664.

7

C.     **Section 1983 And Section 1985**

Section 1983 provides that

> [e]very person who, under color of any statue, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983; *see Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) ("Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States."). "It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 159 (2d Cir. 2005).

Section 1985 prohibits conspiracies "for the purpose of depriving . . . any person or class of persons of the equal protections of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). A conspiracy claim under Section 1985 requires a plaintiff to allege: (1) the existence of a conspiracy "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus"; (2) that the conspiracy endeavored to "depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"; (3) an act taken in furtherance of the conspiracy; and (4) that such act injured plaintiff's person, damaged plaintiff's property, or deprived plaintiff "of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (internal quotations omitted).

D.     **Plaintiff's *Pro Se* Status**

"Where, as here, the [amended] complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see*

8

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotations omitted)).  This policy is "driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."  *McLeod v. Jewish Guild For The Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotations omitted).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief."  *Meadows v. United Servs.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Hogan*, 738 F.3d at 515).  That is, "dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements."  *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)); *see also Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law.").

## III.   DISCUSSION

Defendants contend that the FAC must be dismissed because (1) the Court lacks jurisdiction over Plaintiff's pursuit of criminal prosecutions, (2) any Section 1983 civil rights claim or implied New York law assault or battery claim for the alleged 1994 assault are time-barred, (3) the Court cannot order a DNA test without "impacting [Plaintiff's] conviction" in violation of *Heck v. Humphrey*, 512 U.S. 477 (1994), and (4) the *Rooker-Feldman* doctrine deprives this Court of jurisdiction over Plaintiff's request for a DNA test because the New York state court denied Plaintiff's Vacatur Motion that requested the same relief. [7]  *See* Def. Mem. at 5-7.

---

[7] "When a federal suit follows a state suit, the former may, under certain circumstances, be prohibited by what has become known as the *Rooker-Feldman* doctrine." *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018).  That doctrine is derived from two Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—which together "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho*, 910 F.3d

9

### A.     Plaintiff Lacks Standing To Seek Criminal Prosecutions

Plaintiff acknowledged in his Opposition that the Court cannot order a "a criminal prosecution over the individual defendants but [can adjudicate] civil [claims] over Plaintiff's civil rights issues . . . ." Opp. at 7-8. Building on that premise, the Opposition seeks to amend the FAC to convert Plaintiff's request for a criminal prosecution of Defendants to a request for damages under Section 1983 and Section 1985. *See* Opp. at 8. Plaintiff plainly abandoned his request for a court-ordered criminal prosecution of Defendants. *See e.g.*, *Barkai v. Mendez*, 629 F. Supp. 3d 166, 190 (S.D.N.Y. 2022) (dismissing claim where plaintiff's opposition to dismissal both "affirmatively disavow[ed] the claim" and otherwise "fail[ed] to respond to" relevant dismissal arguments). Even if that were not the case, Plaintiff lacks standing to pursue any prosecution of Defendants.

"As standing is 'a limitation on the authority of a federal court to exercise jurisdiction,' it is properly addressed within the context of a Rule 12(b)(1) motion." *City of N.Y. v. Milhelm Attea & Bros.*, 550 F. Supp. 2d 332, 340 (E.D.N.Y. 2008) (quoting *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, (1975)). "[A] plaintiff must demonstrate standing separately *for each form of relief sought*." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (emphasis added). Critically here, the Supreme Court long ago recognized that "a private citizen lacks a judicially cognizable interest in" and therefore lacks standing to pursue "the prosecution or nonprosecution of another." *Linda R. S. v. Richard D.,* 410 U.S. 614, 619 (1973).

---

at 644 (internal quotations omitted). "The doctrine is a consequence of 28 U.S.C. § 1257, which 'vests authority to review a state court's judgment solely in the Supreme Court.'" *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)) (internal alterations omitted).

Despite Judge Brown's application of this principle when he dismissed the Complaint's request for an investigation of Defendants (*see Dempsey*, 2022 WL 20622843, at *5), the FAC

> invokes 18 U.S.C. §§ 241, 242, criminal statutes which provide for criminal liability for conspiracy against an individual's civil rights and deprivation of those rights. But Plaintiff cannot initiate the arrest and prosecution of an individual in this Court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding . . . because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

*Razzoli v. Black Lives Matter & Members*, No. 21-CV-4145, 2021 WL 2322346, at *3 (S.D.N.Y. June 7, 2021), *appeal dismissed*, No. 21-1443, 2021 WL 6101500 (2d Cir. Nov. 15, 2021). Thus, Plaintiff "cannot demonstrate standing" for any claim seeking to "investigate and prosecute" Defendants. *Lawyers' Comm. for 9/11 Inquiry, Inc. v. Garland*, 43 F.4th 276, 283 (2d Cir. 2022); *see Brady v. Berman*, 837 F. App'x 70, 71 (2d Cir. 2021) (affirming dismissal of plaintiff's request to prosecute others for lack of standing); *In re Atty. Disciplinary Appeal*, 650 F.3d 202, 204 (2d Cir. 2011) (per curiam) (affirming that a person lacks standing to pursue the prosecution of another). As such, this claim for relief should be rejected and further leave to amend should be denied. *See, e.g., Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (affirming the dismissal of claims for lack of jurisdiction and the denial of leave to amend those claims).

### B. Plaintiff's Claim Regarding DNA Testing Is Deficient

The Court construes Plaintiff's pursuit of DNA testing as a Section 1983 claim seeking access to potentially exculpatory DNA evidence. *See Skinner v. Switzer*, 562 U.S. 521, 534 (2011) (finding that a convicted prisoner "properly invoked" Section 1983 in his suit for DNA testing)[8]; *McLeod*, 864 F.3d at 158 (finding that the district court was required to construe a *pro se* complaint as asserting

---

[8] Plaintiff's pursuit of a DNA test is not barred by *Heck* because obtaining DNA testing "would not necessarily imply the invalidity of [plaintiff's] conviction. Test results might prove exculpatory, but that outcome is hardly inevitable, for those results could also prove inconclusive or incriminating." *Skinner*, 562 U.S. at 523 (internal quotations omitted).

11

causes of action suggested but not expressly asserted therein). Although a prisoner has no "freestanding" federal substantive due process right to obtain DNA testing, he may "have a liberty interest in demonstrating his innocence with new evidence under state law." *District Attorney's Office for Third Judicial Dist.v. Osborne*, 557 U.S. 52, 68, 72 (2009). "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id*. at 69.

Plaintiff has a "state-created liberty interest in demonstrating his innocence with newly discovered evidence pursuant to N.Y. CRIM. PROC. LAW § 440.10(1)(g)." *McKithen v. Brown*, 626 F.3d 143, 152 (2d Cir. 2010). New York law specifies the process for securing post-conviction DNA testing to exercise that liberty interest. *See* N.Y. CRIM. PROC. LAW § 440.30(1-a)(a). Any facial challenge to that process fails given the Second Circuit's holding that "the process afforded by section 440.30(1-a)(a) is constitutionally adequate." *McKithen*, 626 F.3d at 152; *see Villafane v. Spota*, No. 16-CV-5434, 2017 WL 650065, at *3 (E.D.N.Y. Feb. 16, 2017) ("*McKithen* establishes that New York's procedures do not violate plaintiff's federal rights." (internal quotations omitted)). Any such claim in the FAC should be dismissed with prejudice. *See e.g.*, *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 296 (2d Cir. 2022) (affirming dismissal of futile claim with prejudice).

Furthermore, the *Rooker-Feldman* doctrine deprives this Court of jurisdiction to consider any challenge to N.Y. CRIM. PROC. LAW § 440.10(1)(g) as applied in the New York Supreme Court's denial of Plaintiff's Vacatur Motion that (as noted above) predated this action and likewise sought DNA testing.[9] *See McKithen*, 626 F.3d at 154 (finding as-applied challenge to a state court denial of a motion seeking post-conviction DNA testing necessarily "meets each of *Rooker-Feldman*'s

---

[9] The following elements must be shown for the *Rooker-Feldman* doctrine to deprive a district court of jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Plymouth*, 988 F.3d at 641 (internal quotations omitted).

12

elements"); *Nelson v. Preleski*, No. 3:20-CV-778, 2020 WL 4937991, at *8 n.14 (D. Conn. Aug. 24, 2020) (collecting cases showing that "courts have held that the *Rooker-Feldman* doctrine bars federal jurisdiction over as-applied challenges to state court decisions denying requests for DNA testing"); *see also* ECF No. 24-3 (Vacatur Motion requesting DNA testing); ECF No. 24-5 (denial of Vacatur Motion). Given the lack of subject-matter jurisdiction over it, this as-applied challenge should be dismissed without leave to amend. *See Harty*, 28 F.4th at 444 (affirming the dismissal of claims for lack of jurisdiction and the denial of leave to amend those claims); *Adams v. Horton*, 725 F. App'x 78, 79 (2d Cir. 2018) (affirming the dismissal of *pro se* plaintiff's claims under the *Rooker-Feldman* doctrine and the denial of leave to amend them).

  **C.**  **The Court Construes The FAC As Asserting Section 1983 and Section 1985 Claims, Mooting Plaintiff's Effort To Amend The FAC To Add Those Claims**

As noted above, Plaintiff seeks to amend the FAC to add claims under Section 1983 and Section 1985. Typically, "a plaintiff 'cannot amend his complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss.'" *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)) (internal alterations omitted); *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting claim raised for the first time in plaintiff's opposition to a motion to dismiss). "Nevertheless, a court may consider a *pro se* plaintiff's 'new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint.'" *Herrera v. Navient Corps.*, No. 19-CV-06583, 2020 WL 3960507, at *5 (E.D.N.Y. July 13, 2020) (quoting *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018)). The Court thus construes the FAC as asserting Section 1983 and Section 1985 damages claims which, in any event, are without merit.

### D.        All Remaining Claims Asserted In The FAC Fail

As set forth herein, the remaining claims in the FAC are deficient.

#### 1.        *Heck* Bars The FAC's Efforts To Invalidate Plaintiff's Convictions

"Insofar as Plaintiff complains of misconduct during his underlying state court prosecution, including the veracity of his confession and the alleged planting of evidence against him, such claims are barred by *Heck* and its progeny." *Dempsey*, 2022 WL 20622843, at *4; *see Skinner*, 562 U.S. at 533 ("When 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' . . . § 1983 is not an available remedy." (quoting *Heck*, 512 U.S. at 487)); *Kevilly v. New York*, 410 F. App'x 371, 374 n.3 (2d Cir. 2010) (finding that *Heck* barred plaintiff's Section 1985 claim that implied his conviction was invalid (citing *Amaker v. Weiner*, 179 F.3d 48, 51-52 (2d Cir. 1999)). Judge Brown already dismissed these claims asserted in the Complaint without granting leave to amend them. *See Dempsey*, 2022 WL 20622843, at *4-5. To the extent it may be necessary, the undersigned recommends that the Court do the same with respect to the FAC. *See Kevilly*, 410 F. App'x at 375 (dismissing Section 1983 and Section 1985 claims as barred by *Heck* and denying leave to amend them).

#### 2.        False Arrest, Excessive Force, Assault, And Battery Claims Are Time-Barred[10]

Generally, the burden rests with defendants to plead and prove the affirmative defense that a claim is time barred. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021). Defendants, however, may properly move to dismiss a claim when "the dates in a complaint show that an action is barred by a statute of limitations." *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021)

---

[10] *Heck* does not preclude Section 1983 false arrest claims and most Section 1983 excessive force claims. *See Wallace*, 549 U.S. at 394-95 (explaining that *Heck* does not bar false arrest claims); *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (holding that *Heck* does not bar a plaintiff convicted of resisting arrest from bringing excessive force claims against the arresting officer); *Diggs v. Guynup*, 621 F. Supp. 3d 315, 324 (N.D.N.Y. 2022) ("[C]ourts in this Circuit have routinely recognized that an excessive force claim does not usually bear the requisite relationship under *Heck* to mandate its dismissal"; collecting cases (internal quotations omitted)). Naturally, *Heck* is no bar to state law assault and battery claims. *Sampson v. Pia*, No. 3:15-CV-359, 2017 WL 1138127, at *8 (D. Conn. Mar. 27, 2017).

(quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)). Likewise, "district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'"[11] *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (quoting *Leonhard v. United States*, 633 F.2d 599, 609 n. 11 (2d Cir. 1980)); *see Harte v. City of N.Y.*, 799 F. App'x 96, 97 (2d Cir. 2020) (affirming *sua sponte* dismissal of Section 1983 and Section 1985 claims).

> a) Section 1983 False Arrest Claims

Section 1983 claims arising in New York are subject to a three-year limitations period. *E.g.*, *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). Generally, a Section 1983 false arrest claim "accrues at the time that the alleged false arrest ends." *Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 601 (E.D.N.Y. 2017); *see Wallace v. Kato*, 549 U.S. 384, 389 (2007) (holding that a false arrest claim accrued when the "false imprisonment came to an end"). Where, as here, "the arrest is followed by criminal proceedings" a false arrest claim accrues when "the claimant becomes detained pursuant to legal process" at arraignment. *Wallace*, 549 U.S. at 389-90, 397. Plaintiff was necessarily arraigned before his 1995 conviction. *See* FAC at 8-9 (describing prosecution prior to conviction); *Ying Li*, 246 F. Supp. 3d at 601 & n.14 (holding that plaintiff was "clearly" arraigned after her arrest even though her pleading did not address that date); *Smith v. City of New York*, No. 12 CIV. 4891 KPF, 2013 WL 5942224, at *3 (S.D.N.Y. Nov. 6, 2013) (finding plaintiff's false arrest claim accrued the same day he was arrested and charged given the lack of any allegation that he "was not arraigned promptly thereafter"). Any false arrest claims asserted in this action, commenced nearly three decades later, are thus time-barred. *See, e.g., Barnes*, 68 F.4th at 127 (affirming dismissal of

---

[11] The Motion's timeliness arguments address Section 1983 but not Section 1985. *See* Def. Mem. at 5. That is undoubtedly because Plaintiff first raised Section 1985 in the subsequent Opposition. *See* Opp. at 8. Accordingly, the Court considers *sua sponte* the timeliness of the Section 1985 claims that the Court deems asserted in the FAC.

Section 1983 false arrest claim as untimely).

            b)      *Section 1983 Excessive Force Claims*

Judge Brown previously held that the Section 1983 excessive force claims asserted in the Complaint were untimely. In that ruling, Judge Brown explained that (1) Section 1983 excessive force claims arising in New York are subject to a three-year limitations period, (2) "the clock starts running when the use of force occurred," and (3) thus the August 8, 2022 Complaint's excessive force claims "are well outside the three-year statute of limitations" because they "challenge[] conduct that allegedly occurred in 1994." *Dempsey*, 2022 WL 20622843, at *3 (internal quotations omitted). The instant Section 1983 excessive force claims based on the same allegations raised in the Complaint are time-barred for the same reasons. *See id.* at *3-4; *accord Barnes*, 68 F.4th at 127 (affirming dismissal of Section 1983 excessive force claim as time-barred under the same principles)

            c)      *Section 1985 Claims Predicated On False Arrest Or Excessive Force*

Section 1985 claims arising in New York are likewise subject to a three-year limitations period. *Barnes*, 68 F.4th at 127 (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)); *Paige v. Police Dep't Of City Of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001). A Section 1985 claim "accru[es] 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Barnes*, 68 F.4th at 127 (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 79-80 (2d Cir. 2002)) (internal alterations omitted); *Cornwell*, 23 F.3d at 703 (similar). Plaintiff was plainly aware of the supposed false arrest and excessive force when he allegedly endured those events nearly three decades before he commenced this action. *See* FAC at 5-9; *see also Dempsey*, 2022 WL 20622843, at *4 (finding it "clear" that "Plaintiff was aware of the alleged assault on February 16, 1994"). Therefore, to the extent Plaintiff styles his Section 1985 claim on allegations that Defendants conspired to deprive him of the Constitution's protections against false arrest or excessive force, that too is untimely. *See Barnes*, 68 F.4th at 127-28 (affirming dismissal of Section 1985 claim as time-

barred because it "began to accrue when [plaintiff] was arrested, charged, and detained" outside the limitations period); *Ward v. City of N.Y.*, 777 F. App'x 540, 542 (2d Cir. 2019) (affirming dismissal of Section 1985 claims as untimely because "all of the events recounted in [plaintiff's] complaint occurred and were known to her prior to . . . three years before she initiated this action"); *Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (similar).

    d)  *Assault And Battery Claims Under New York Law*

Under New York law, civil assault "is an intentional placing of another person in fear of imminent harmful or offensive contact," and civil battery "is an intentional wrongful physical contact with another person without consent." *Tardif v. City of N.Y.*, 991 F.3d 394, 410 (2d Cir. 2021) (quoting *Charkhy v. Altman*, 252 A.D.2d 413, 414 (N.Y. App. Div. 1st Dep't 1998)). Defendants confirm these claims could have been asserted in the FAC by arguing that such claims would be untimely. *See* Def. Mem. at 5. The Court accordingly construes the FAC as asserting assault and battery claims. *See Herrera*, 2020 WL 3960507, at *5; *Davila*, 343 F. Supp. 3d at 267. The Court agrees with Defendants that such claims are time-barred.

"[T]he statute of limitations on claims for damages arising from assault or battery in New York is one year." *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 247 (2d Cir. 2021) (citing N.Y. C.P.L.R. § 215(3)). "Causes of action for assault and battery [under New York law] accrue immediately upon the occurrence of the tortious act . . . ." *Panetta v. Cassel*, No. 7:20-CV-2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020) (quoting *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 204 (E.D.N.Y. 1998)); *see Moore v. Keller*, 498 F. Supp. 3d 335, 347 (N.D.N.Y. 2020) ("Of course, claims for assault and battery accrue when they happen."). Accordingly, any assault and battery claims asserted by Plaintiff in 2022 regarding the events of February 16, 1994 "are well outside the statute of limitations and are time-barred." *Dempsey*, 2022 WL 20622843, at *4; *see Allen*, 665 Fed. App'x. at 13 (affirming dismissal of assault and battery claims as untimely because they were filed more than

17

one year after their alleged occurrence); *Hong Hui Kuang v. Jie Wen Zhou*, 212 A.D.3d 579, 580 (N.Y. App. Div. 1st Dep't 2023) (same).

*      *      *

Judge Brown already granted Plaintiff leave to amend his untimely claims to afford Plaintiff "an 'opportunity to be heard' as to 'whether he might have meritorious tolling arguments.'" *Dempsey*, 2022 WL 20622843, at *4 (quoting *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007)). As just explained, Plaintiff's instant Section 1983 false arrest claims, Section 1983 excessive force claims, Section 1985 claims premised on false arrest or excessive force, and New York assault and battery claims are time-barred. Despite Judge Brown's express instruction to Plaintiff that his amended pleading "includ[e] a basis to toll" the limitations periods that render Plaintiff's claims untimely (*Dempsey*, 2022 WL 20622843, at *5), the FAC failed to invoke any tolling doctrine. *See generally* FAC; *see also Hutchinson v. City of Long Beach*, No. 20-CV-5080, 2021 WL 11471379, at *3 (E.D.N.Y. July 22, 2021) (finding *sua sponte* that *pro se* plaintiff could not rely on equitable tolling to maintain his untimely Section 1983 claims because plaintiff "has not made even the most cursory attempt to demonstrate that he pursued his rights diligently or that he was prevented from asserting his rights by some extraordinary circumstances."). Further, Plaintiff ignored Defendants' arguments that these claims in the FAC are time-barred. *Compare* Def. Mem. at 5 *with* Opp. Given these circumstances, leave to amend Plaintiff's untimely claims should be denied. *See Ward*, 777 F. App'x at 544 ("[T]he district court was not obligated to grant [*pro se* plaintiff] leave to amend a *second* time after [his] first amended complaint failed to cure the defects that the court identified in its order to amend." (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988))).

## IV.   CONCLUSION

For the reasons set forth above, the undersigned recommends that the Court GRANT the Motion and DENY Plaintiff further leave to amend his pleadings in this action.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). **Defendants shall serve a copy of this Report and Recommendation on Plaintiff and file proof of service by September 19, 2023**. Any requests for an extension of time for filing objections must be directed to Judge Brown. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED:

Dated: Central Islip, New York
September 14, 2023

s/ Lee G. Dunst

**LEE G. DUNST**
United States Magistrate Judge